IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| KATELYN HANKS,<br><br>                  Plaintiff,<br><br>vs.<br><br>SOUTHERN KITCHEN CONCEPTS, LLC,<br>RJ MEXICAN CUISINE, L.L.C.,<br>MARLU DAYS LLC, d/b/a T.G.I. FRIDAY'S<br>and MARKET ROSS TX OFFICE<br>OWNER LLC,<br><br>                  Defendants. | CIVIL ACTION<br><br>File No.: 3:18-cv-1316 |

## CONSENT DECREE

This Consent Decree (this "Agreement") is made and entered into by and between **KATELYN HANKS** referred to in this Agreement as ("Plaintiff") and **SOUTHERN KITCHEN CONCEPTS, LLC, RJ MEXICAN CUISINE, L.L.C., MARLU DAYS LLC, d/b/a T.G.I. FRIDAY'S and MARKET ROSS TX OFFICE OWNER LLC** ("Defendants"). The signatories to this Agreement will be referred to jointly as the "Parties." This Agreement is made as a compromise between the Parties for the complete and final settlement of their claims, differences, and causes of action with respect to the dispute described below.

### Preamble

**WHEREAS**, on or about May 23, 2018, Plaintiff filed an action in the United States District Court for the Northern District of Texas, Dallas Division, entitled *Katelyn Hanks v. Southern Kitchen Concepts, LLC, RJ Mexican Cuisine, L.L.C., Marlu Days LLC, d/b/a T.G.I. Friday's and Market Ross TX Office Owner LLC*, Case No: 3:18-CV-01316 (the "Action"), wherein Plaintiff asserted claims for injunctive relief against Defendants based upon purported violations of Title III of the Americans with Disabilities Act, 42 U.S.C. 12181, *et seq.* ("ADA") and related claims for relief respecting the real property located at or about 1701 N. Market Street, Dallas, TX 75202, Dallas County Property Appraiser's account number 00000100144000000, 00000100141000000 and 00000100138000000 (referred to as the "Facility");

**WHEREAS**, the Parties desire to compromise and fully and finally resolve and settle all actual and potential claims or litigation between them, to

1

avoid the uncertainty, time and expense that would accompany such litigation;

**WHEREAS**, the Parties have agreed to enter into this Agreement pursuant to which each and every claim and/or cause of action asserted or that could have been asserted by Plaintiff against Defendants shall be fully, forever, and finally released;

**NOW, THEREFORE**, in consideration of the covenants and mutual promises and agreements contained herein, and other valuable consideration, the sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. **Attorney's Fees and Costs**

    1.1     Plaintiff and Defendants shall execute this Agreement and Plaintiff's counsel, Douglas S. Schapiro, Esq., Schapiro Law Group, P.L., 21301 Powerline Road, Suite 106, Boca Raton, FL 33433. Plaintiff's Counsel shall prepare a Joint Stipulation to Approve Consent Decree and Dismissal of Defendants with Prejudice to be distributed to all Parties for execution. Defendants agree to pay a total settlement amount of **$4,800.00** comprising of attorney's fees and costs of $4,500.00 and a reinspection fee of $300.00 to Plaintiff. All payments shall be made payable to "**Schapiro Law Group, P.L. Trust Account**," with an indication that the check is issued "in settlement of Case No. 4:18-CV-01316.

    1.2     Upon delivery to Plaintiff's Counsel of the fully executed Agreement and payment due with the executed Agreement referenced in 1.1 above, Plaintiff shall promptly file the Joint Stipulation to Approve Consent Decree and Dismissal of Defendants with Prejudice, attaching a copy of the fully executed Agreement and proposed order of dismissal with prejudice.

    1.3     Plaintiff agrees to take any and all additional steps required to obtain dismissal of the Action as set forth above. Except as set forth herein, each Party shall be responsible for payment of his or its own litigation expenses, costs and attorneys' fees.

    1.4     Plaintiff and Plaintiff's Counsel acknowledge and agree that they are solely and entirely responsible for the payment and discharge of all federal, state, and local taxes, if any, that may, at any time, be found to be due upon or as a result of the Payment hereunder. Plaintiff and Plaintiff's Counsel, and each of them, expressly acknowledge that Defendants have not made any representations regarding the tax consequences of any Payment received pursuant to this Agreement.

    1.5     The Parties agree that a condition precedent for the validity of this Agreement is the Court's retaining jurisdiction to enforce the Agreement.

2

2. **Alterations or Modifications to the Facilities**

    2.1 The Parties hereto acknowledge and stipulate that Defendants shall modify or alter the items expressly identified by and in the manner specified in Exhibit "A." The repairs or modifications identified in Exhibit "A" shall be completed in all respects no later than seven (7) months from the effective date of the execution of this Agreement, which shall be the date indicated by the last signatory to the Agreement. The time period for Completion by Defendants shall be subject to acts of God, force majeure, or events beyond the control of Defendants, such as inability to obtain building or zoning permits, failure of the city/county or state inspectors to make inspections, city/county/state work on adjacent roadways/sidewalks which delay implementation of this Agreement, contractor defaults or work stoppages. In the event of such unforeseen circumstances, the time period for completion of the alterations or modifications in Exhibit "A" shall be extended by the number of days reasonably attributable to such delay-causing event as long as Defendants provide notice to Plaintiff's Counsel prior to the original completion date set forth above.

    2.2 Upon completion of the removal of the barriers and the alterations and modifications set forth in Exhibit "A", Defendants shall provide written notice by certified or registered mail or via e-mail to Plaintiff's Counsel.

    2.3 Right to Inspection: The Parties stipulate that after Plaintiff's Counsel receives notice of the completion of the alterations or modifications described in Exhibit "A" or after the elapse of the seven (7) month time period set forth in Section 2.1 above, whichever is sooner, Plaintiff may inspect the Facility to ensure that Defendants have completed the repairs or modifications described in Exhibit "A." Defendants shall provide Plaintiff or their representative reasonable access to the Facility to verify completion of the work described in Exhibit "A."

    2.4 If an inspection contemplated herein reveals that any of the alterations or modifications described in Exhibit "A" have not been performed in a manner that does not materially comply with Exhibit "A," then Plaintiff shall have the right to enforce this Agreement pursuant to Section 3.1.

    2.5 It is agreed by all parties that if and upon all of the above modifications being completed as set forth in Exhibit "A," the Facility will be fully compliant with the ADA pursuant to the readily achievable standard.

3. **Enforcement Provisions**

    3.1 In the event the alterations and modifications described in Exhibit "A" are not completed in the manner and time frame set forth in this Agreement, Plaintiff shall be entitled to file an action to obtain specific performance against Defendants or otherwise enforce the requirements of this Agreement. In any action to enforce this Agreement, the parties agree Defendants' failure to timely modify the property

3

pursuant to Section 2.1 above is a material breach of the Agreement.

4. **Compromise**

    4.1    The Parties agree and acknowledge that this Agreement is the result of a compromise and shall never be construed as an admission of any liability, wrongdoing, or responsibility on the part of the Released Parties (as defined in Section 5.1 below). The Released Parties expressly deny any such liability, wrongdoing, or responsibility.

5. **Mutual Release**

    5.1    In exchange for the good and valuable consideration set forth herein the sufficiency of which is hereby acknowledged, the Parties hereto mutually release each other, or through their corporate capacity, agents, employees, family members, partners, successors, assigns, and heirs, along with anyone claiming by or through them, jointly and severally (collectively the "Releasing Parties") hereby release, acquit, satisfy and discharge the other, and along with any and all of their predecessors, agents, employees, assigns, heirs, officers, directors, shareholders, members, affiliated entities, and any entity or person related to them, jointly and severally, (hereinafter the "Released Parties") from any and all claims, demands, liabilities, debts, judgments, damages, expenses, actions, causes of action or suits of any kind which the Releasing Parties may have, may have had, or may hereafter raise against the Released Parties relating to this subject litigation arising under Title III of the ADA including all claims by the Releasing Parties for attorneys' fees and costs, expert fees, litigation expenses, or any other amount, fee, and/or cost, with the exception of the attorneys' fees and costs required to be paid by the Defendants pursuant to paragraph 1 of this Agreement and any attorney's fees and costs incurred in the any future enforcement of this Agreement. This Release is strictly limited to the Facility. This Release does not otherwise affect the Parties' rights and obligations under their respective leases.

    5.2    As a material inducement for Defendants to enter into this Agreement, Plaintiff represents and warrants that she is not aware of any pending tort, contract, or other legal claims against Defendants, other than the specific claims brought in this Action under Title III of the ADA, which are released under this Agreement.

    5.3    Plaintiff represents and warrants that no portion of any of the matters released by this Agreement and no portion of any recovery or settlement to which they might be entitled have been assigned or transferred to any other person, firm, or corporation not a Party to this Agreement, in any manner, including by way of subrogation or operation of law or otherwise.

4

6. Notice

    6.1    Unless otherwise provided in this Agreement or by law, all notices or other communications required or permitted by this Agreement or by law to be served on or delivered to any Party to this Agreement shall be delivered as follows:

Defendants:

**SOUTHERN KITCHEN CONCEPTS, LLC**
c/o D. Bradley Kizzia, Esq.
KIZZIA JOHNSON PLLC
1910 Pacific Avenue, Suite 13000
Dallas, TX 75201
Or
bkizzia@kjpllc.com

**RJ MEXICAN CUISINE, L.L.C.**
c/o Richard M. Hunt, Esq.
HUNT HUEY, PLLC
1717 McKinney Ave., Suite 700
Dallas, Texas 75202
Or
rhunt@hunthuey.com

**MARLU DAYS LLC, d/b/a T.G.I. FRIDAY'S**
c/o Tracy Graves Wolf, Esq.
LEWIS BRISBOIS BISGAARD & SMITH LLP
2100 Ross Avenue, Suite 2000
Dallas, TX 75201
Or
Tracy.wolf@lewisbrisbois.com

**MARKET ROSS TX OFFICE OWNER LLC**
c/o Wes Butler, Esq.
Kilpatrick Townsend & Stockton LLP
2001 Ross Avenue, Suite 4400
Dallas, TX 75201
Or
wbutler@kilpatricktownsend.com

To Plaintiff:

Douglas S. Schapiro, Esq.
Schapiro Law Group, P.L.

5

21301 Powerline Road, Suite 106
Boca Raton, FL 33433
Or
Schapiro@schapirolawgroup.com

6.2     A Party may change such address for the purpose of this paragraph by giving timely written notice of such change to all other Parties to this Agreement in the manner provided in this paragraph.

7.    **Free Will**

7.1     The Parties acknowledge that each has had an opportunity to consult with counsel of their own choosing concerning the meaning, import, and legal significance of this Agreement, and that each has done so to the extent desired. In addition, the Parties acknowledge that they each have read this Agreement, as signified by their signatures hereto, and are voluntarily executing the same after having had the opportunity to seek the advice of counsel for the purposes and consideration herein expressed.

8.    **Miscellaneous Terms and Conditions**

8.1     This Agreement contains the complete settlement agreement between the Parties. Any and all prior agreements, representations, negotiations, and understandings between the Parties, oral or written, express or implied, with respect to the subject matter hereof are hereby superseded and merged herein.

8.2     This Agreement may be executed in counterparts or by copies transmitted by facsimile or email, all of which shall be given the same force and effect as the original.

8.3     This Agreement may be modified only by a written document signed by all of the Parties. No waiver of this Agreement or of any of the promises, obligations, terms, or conditions hereof shall be valid unless it is written and signed by the Party against whom the waiver is to be enforced.

8.4     This Agreement shall be binding upon the Parties hereto, their predecessors, successors, parents, subsidiaries, affiliates, assigns, agents, directors, attorneys, officers, families, heirs, spouses, and employees.

8.5     If any provision of this Agreement shall be finally determined to be invalid or unenforceable under applicable law by a court of competent jurisdiction, that part shall be ineffective to the extent of such invalidity or unenforceability only, without in any way affecting the remaining parts of said provision or the remaining provisions of this Agreement.

US2008 14379306 1

8.6     The Parties acknowledge that they have reviewed this Agreement in its entirety and have had a full opportunity to negotiate its terms, and therefore waive all applicable rules of construction that any provision of this Agreement should be construed against its drafter and agree that all provisions of the Agreement shall be construed as a whole, according to the fair meaning of the language used.

8.7     Plaintiff represents that, other than the Action, he has not filed or authorized the filing of any complaints, charges, or lawsuits against Defendants with any federal, state, or local court, governmental agency, or administrative agency relating to the subject Facilities, and that if, unbeknownst to Plaintiff, such a complaint, charge, or lawsuit has been filed on his behalf, he or it will use his or its best efforts to cause it immediately to be withdrawn and dismissed with prejudice.

8.8     The parties and their Counsel agree to execute any and all further documents and perform any and all further acts reasonably necessary or useful in carrying out the provisions and purposes of this Agreement.

8.9     In any action or other proceeding to enforce rights under this Agreement, the prevailing Party shall recover from the losing party all attorneys' fees, litigation expenses, and costs.

8.10    The Parties agree that any ambiguities in this Agreement shall not be construed against the drafter of the Agreement.

8.11    The Parties acknowledge that all Recitals and/or "WHEREAS" clauses preceding paragraph 1 are incorporated as a material part of this Agreement.

8.12    This Agreement is entered into in and shall be governed by and construed and interpreted in accordance with the substantive laws of the State of Texas.

IN WITNESS WHEREOF, the Parties have executed this agreement as of the date(s) set forth below:

Dated: 7-18-218, 2018

*KMH*

_____
Katelyn Hanks

Dated: _____, 2018

_____
For: **SOUTHERN KITCHEN CONCEPTS, LLC**

Title: _____

Dated: _____, 2018

_____
For: **RJ MEXICAN CUISINE, L.L.C.**

Title: _____

Dated: _____, 2018

_____
For: **MARLU DAYS LLC, d/b/a T.G.I. FRIDAY'S**

Title: _____

Dated: _____, 2018

_____
For: **MARKET ROSS TX OFFICE OWNER LLC**

Title: _____

8

IN WITNESS WHEREOF, the Parties have executed this agreement as of the date(s) set forth below:

Dated: _____, 2018

Katelyn Hanks

Dated: 7-17, 2018

_____
For: SOUTHERN KITCHEN CONCEPTS, LLC

Title: MEMBER/MANAGER

Dated: _____, 2018

_____
For: RJ MEXICAN CUISINE, L.L.C.

Title: _____

Dated: _____, 2018

_____
For: MARLU DAYS LLC, d/b/a T.G.I. FRIDAY'S

Title: _____

Dated: _____, 2018

_____
For: MARKET ROSS TX OFFICE OWNER LLC

Title: _____

8

US2008 14379306 1

IN WITNESS WHEREOF, the Parties have executed this agreement as of the date(s) set forth below:

Dated: _____, 2018          _____
                                    Katelyn Hanks

Dated: _____, 2018          _____
                                    For: **SOUTHERN KITCHEN CONCEPTS, LLC**

                                    Title: _____

Dated: 7/19, 2018                    *[signature]*
                                    For: **RJ MEXICAN CUISINE, L.L.C.**

                                    Title: MANAGER

Dated: _____, 2018          _____
                                    For: **MARLU DAYS LLC, d/b/a T.G.I. FRIDAY'S**

                                    Title: _____

Dated: _____, 2018          _____
                                    For: **MARKET ROSS TX OFFICE OWNER LLC**

                                    Title: _____

IN WITNESS WHEREOF, the Parties have executed this agreement as of the date(s) set forth below:

Dated: _____ __, 2018      _____
                                Katelyn Hanks


Dated: _____ __, 2018      _____
                                For: **SOUTHERN KITCHEN CONCEPTS, LLC**

                                Title: _____


Dated: _____ __, 2018      _____
                                For: **RJ MEXICAN CUISINE, L.L.C.**

                                Title: _____


Dated: __JULY 11__ __, 2018     _____/s/_____
                                For: **MARLU DAYS LLC, d/b/a T.G.I. FRIDAY'S**

                                Title: __MANAGER_____


Dated: _____ __, 2018      _____
                                For: **MARKET ROSS TX OFFICE OWNER LLC**

                                Title: _____

8

IN WITNESS WHEREOF, the Parties have executed this agreement as of the date(s) set forth below:

Dated: _____, 2018        _____
                               Katelyn Hanks

Dated: _____, 2018        _____
                               For: **SOUTHERN KITCHEN CONCEPTS, LLC**

                               Title: _____

Dated: _____, 2018        _____
                               For: **RJ MEXICAN CUISINE, L.L.C.**

                               Title: _____

Dated: _____, 2018        _____
                               For: **MARLU DAYS LLC, d/b/a T.G.I. FRIDAY'S**

                               Title: _____

Dated: July 17, 2018           _____[signature]_____
                               For: **MARKET ROSS TX OFFICE OWNER LLC**

                               Title: Vice President

8

## EXHIBIT A

**For purposes of this Agreement, "2010 ADAAG Standards" refers to the ADA Accessibility Guidelines 28 C.F.R. Pt. 36, App. A**

1. The maximum height of a door threshold at the accessible entrances of the Facility and each Unit shall be ¾ inch as long as the threshold is beveled at a maximum slope of 1:2. Otherwise, the maximum unbeveled height of the threshold at accessible entrances shall be ½ inch.

2. For each tenant space that is inaccessible due to a vertical rise exceeding 1 inch, a permanent ramp connecting those areas of the interior that are currently inaccessible via stairs or vertical rise shall be installed. This permanent ramp shall comply with section 405 of the 2010 ADAAG standards, except it is agreed it is not readily achievable to have the maximum surface slope of the ramp at 1:12, and the ramp shall be permitted to have a maximum surface slope of 1:10.
   - If the cost of <u>each</u> of the above ramps exceeds $4000.00 or it is not technically feasible to install a ramp compliant with section 405 of the 2010 ADAAG Standards in that area, after notice is provided to Plaintiff of the cost exceeding $4,000.00 or the technical infeasibility of a ramp, as a readily achievable alternative to a permanent ramp, a portable ramp may instead be utilized. Defendants shall post a sign in the area of the vertical rise containing the International Symbol of Accessibility stating, "Ring Bell for Assistance" A doorbell shall be affixed which, when pressed, chimes into the interior of the unit it serves. A policy shall be enforced of having an employee of the tenant bring a portable ramp to the vertical rise and assist a disabled patron into the unit. The tenant responsibilities in this section shall apply to Defendant, SOUTHERN KITCHEN CONCEPTS, LLC and RJ MEXICAN CUISINE, LLC.

3. Where ramps require hand rails (total vertical rise of the ramp exceeds six inches), said handrails shall comply with section 505 of the 2010 ADAAG Standards, this includes but is not limited to having a continuous gripping surface extending the entire length of the hand rails, having hand rails on both sides of the ramp, having the height of the upper surface of the handrail between 34 and 38 inches above the finished floor and having the hand rail extend 12 inches beyond the beginning and end of the ramp.

4. It is agreed it is not readily achievable to modify the bar inside T.G.I

9

Friday's to provide a section that has a maximum height of 34 inches above the finished floor. As a readily achievable alternative, Defendants shall provide one (1) accessible table fully compliant with section 902 of the 2010 ADAAG Standards within fifteen (15) feet of the bar. This table shall not count towards the 5% of dining surfaces in the Facility that are required to comply with section 902 of the 2010 ADAAG standards.

5. One (1) table, fully compliant with section 902 of the 2010 ADAAG standards shall be placed in the exterior eating areas of the restaurants operated by Defendants **SOUTHERN KITCHEN CONCEPTS, LLC, RJ MEXICAN CUISINE, L.L.C., and MARLU DAYS LLC, d/b/a T.G.I. FRIDAY'S.**

6. It is agreed it is not readily achievable to modify the surface slope of the access route between Unit 110 and Ellen's Southern Kitchen so it no longer has a maximum surface slope exceeding 1:20. As a readily achievable alternative Defendant **MARKET ROSS TX OFFICE OWNER, LLC** shall install handrails in compliance with section 505 of the 2010 ADAAG standards along the sloped surface of the access route between Unit 110 and Ellen's Southern Kitchen

7. For doors and entrances to the Facility that are not accessible and are not required to be accessible under this Consent Decree of applicable law, a sign shall be affixed next to the non-accessible door and shall state, "Not Accessible Entrance. Nearest Accessible Entrance" and have an arrow pointing to the nearest accessible entrance.

**SOUTHERN KITCHEN RESTROOMS to be completed by Defendant SOUTHERN KITCHEN CONCEPTS, LLC**

8. The toilet shall be modified, so the flush control is on the open side of the toilet room.

9. Coat hooks in the restroom shall have a maximum height of 48 inches above the finished floor.

10. The door to the toilet stall shall be self-closing in compliance with section 604.8.1.2 of the 2010 ADAAG Standards.

11. The pipes on the sinks shall be insulated to protect against contact in compliance with section 606.5 of the 2010 ADAAG Standards.

**TGI FRIDAY RESTROOMS to be completed by Defendant MARLU DAYS,**

LLC

12. A clear maneuvering clearance for the restroom door, compliant with section 404.2.4.3 of the 2010 ADAAG Standards shall be provided to the accessible restroom door(s) If the cost of providing a clear maneuvering clearance compliant with section 404.2.4.3 of the 2010 ADAAG Standards exceeds $2,000.00 or is not technically feasible, after providing Plaintiff's counsel with notice of such cost or infeasibility, it shall be declared not readily achievable to have a restroom door with a clear maneuvering clearance in compliance with section 404.2.4.3 of the 2010 ADAAG standards.

13. The door to the toilet stall shall be self-closing in compliance with section 604.8.1.2 of the 2010 ADAAG Standards.

14. The height of the paper towel dispenser or other hand drying device shall be modified, so its actionable mechanism has a maximum height of 48 inches above the finished floor.

15. The pipes on the sinks shall be insulated to protect against contact in compliance with section 606.5 of the 2010 ADAAG Standards.

16. Signage shall be posted adjacent to each accessible restroom door in compliance with sections 216.8 and 703 of the 2010 ADAAG Standards.

**RJ MEXICAN CUISINE RESTROOMS to be completed by Defendant RJ MEXICAN CUISINE, LLC**

17. The door to the toilet stall shall be self-closing in compliance with section 604.8.1.2 of the 2010 ADAAG Standards.

18. The height of the paper towel dispenser or other hand drying device shall be modified, so its actionable mechanism has a maximum height of 48 inches above the finished floor.

19. The height of the soap dispenser shall be modified, so the actionable mechanism of the soap dispenser has a maximum height of 48 inches above the finished floor.